IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| NATURE'S SUNSHINE PRODUCTS, INC., a Utah corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAAM ENTERPRISE INC., a New York corporation, SOMENDAR GAUTAM, an individual, and JOHN DOES 1–10, individually or as corporations/business entities,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS<br><br>Case No. 2:25-cv-00012-TC<br>Judge Tena Campbell |

Plaintiff Nature's Sunshine Products, Inc. (NSP) brings this trademark action against Defendants SAAM Enterprise Inc. (SAAM), and Somendar Gautam. NSP asserts six claims: trademark infringement under the Lanham Act; unfair competition under the Lanham Act; common law trademark infringement; deceptive trade practices under Utah Code Ann. § 3-11a-3; unfair competition under Utah Code Ann. § 13-5a-102; and tortious inference with contractual relations. These claims arise from the Defendants' alleged misappropriation of NSP's trademarks in connection with their internet sales of products bearing NSP's trademarks.

The Defendants ask the court to dismiss the claims because the court does not have general or specific personal jurisdiction. (ECF No. 14 at 2.) For the reasons set forth below, the

court finds that it has jurisdiction over the case and can resolve NSP's claims against both Defendants.

## FACTUAL BACKGROUND[1]

NSP is a company based in Lehi, Utah, that sources, manufactures, and sells encapsulated herbal supplements. (Compl., ECF No. 1 at ¶¶ 12, 14.) To protect its intellectual property, NSP registered its trademarks with the United States Patent and Trademark Office. (Id. ¶¶ 18, 21.)

NSP sells its products directly to consumers as well as through independent contractors called "Consultants" who are authorized and trained by NSP to market and sell NSP goods. All of NSP's products, whether sold directly to consumers or through an NSP Consultant, come with a satisfaction guarantee, giving buyers 90 days to seek a refund or replacement if they are dissatisfied with the product.

NSP imposes strict quality control and customer service standards on its Consultants' secondary sales. (Id. ¶¶ 15–17.) For example, Consultants must inspect all NSP products for any damage, defects, evidence of tampering, and other non-conformance and remove all such products from their inventory. (Id. ¶ 56.) Consultants are prohibited from tampering with or altering any NSP product, packaging, label, or accompanying literature without NSP's consent. (Id. ¶ 58.) Consultants cannot sell damaged or defective products or sell to entities that they either know or should know will go on to resell the products. Consultants must report any defects to NSP. (Id.) If NSP discovers that a Consultant is failing to follow the NSP Rules, NSP has the right to stop selling its products to that Consultant and to terminate the Consultant's

---

[1] The court takes the facts from NSP's Complaint (ECF No. 1) and Mr. Gautam's declaration (ECF No. 14-2). See Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995) (requiring court to take allegations in plaintiff's complaint as true to the extent defendant's sworn statements do not controvert them).

status as an authorized seller. (Id. ¶ 59.)

On March 29, 2019, NSP permanently terminated Mr. Gautam's status as an NSP Consultant. (Id. ¶ 69.) Around this time, NSP discovered that high volumes of products bearing its trademarks were being sold on Amazon.com through a storefront called "sparkle company," an entity jointly operated by SAAM, a corporation based in Smithtown, New York, and by Mr. Gautam, who resides in New York.[2] (Id. ¶¶ 43–44, 65–67; see also Decl. Somendar Gautam, ECF No. 14-2 at ¶¶ 2–3.) Mr. Gautam is the sole corporate officer of SAAM. (Compl. ¶ 6.) Around this time, numerous consumers began to write negative Amazon reviews of NSP products that NSP alleges were sold by sparkle company, commenting that the products that they had received in the mail were tampered with, diluted, old, foul-smelling, unsealed, missing contents, expired, or showing signs of previous use. (Id. ¶¶ 45–49.)[3]

On September 11, 2019, counsel for NSP sent its first cease-and-desist letter to SAAM and Mr. Gautam. In the letter, which identified NSP as a Utah company, NSP accused SAAM and Mr. Gautam of operating the "sparkle company" Amazon storefront and explained that the Defendants were infringing the NSP Trademarks through their unauthorized online sales. (Id. ¶ 10.) NSP's letter also explained that its Consultants are not permitted to sell NSP Products on online marketplaces or to anyone who intends to resell NSP products, such as SAAM. (Id.) And in this letter, NSP demanded that the Defendants stop selling products bearing NSP's trademarks

---

[2] The "sparkle company" storefront can be accessed at https://www.amazon.com/sp?seller=A23LGCNS1YBSJ6. NSP also attaches screenshots of the storefront to its opposition briefing. (E.g., Sparkle Company Storefront, ECF No. 16-1; Sparkle Company Product Offerings, ECF No. 16-2.)

[3] Amazon does not allow its consumers to identify the seller of the product subject to their review. (Compl. ¶ 51.) But given that the Defendants have sold a high volume of products bearing the NSP Trademarks on Amazon and are not subject to NSP's quality controls, NSP plausibly alleges that at least some of these negative reviews were written by customers who purchased products bearing the NSP trademarks from the Defendants. (Id.)

and that the Defendants disclose which Consultants had provided them with these products. (Id.)

The Defendants did not respond to NSP's September 11, 2019 letter or otherwise contact NSP. (Id. ¶ 69.) On August 18, 2020, NSP sent another cease-and-desist letter to SAAM and Mr. Gautam reiterating the demands from their September 11, 2019 letter and enclosing a draft complaint against the Defendants. (Id.)

After receiving these cease-and-desist letters, the Defendants temporarily stopped selling the NSP trademarked products. (Id. ¶ 70.) But the Defendants' sales eventually began again. (Id. ¶ 94.) The Defendants do not deny that some of their sales of NSP trademarked products went to Utah consumers. Because NSP has not sold any products to Mr. Gautam since it terminated him as a Consultant in March 2019, NSP alleges that the Defendants must have instead purchased NSP products from other Consultants, thereby causing these Consultants to breach their contracts with NSP.

On December 3, 2024, NSP sent its final cease-and-desist letter, reiterating its demands and warning that NSP would imminently file suit in Utah if the Defendants did not immediately stop these sales. (Id. ¶ 71.) The Defendants never responded.

In the meantime, the Defendants' Amazon storefront has continued to advertise and sell products bearing the NSP trademarks, listing SAAM as the "Business Name" of the storefront's operator. (Id. ¶ 72.) NSP's monitoring software estimates that, since October 2023, the Defendants have sold more than 111,000 infringing products on Amazon, earning more than $450,000. (Id. ¶ 74.) NSP also claims that the Defendants began to profit off of their unauthorized sales of products bearing NSP's trademarks as early as 2019. (Id. ¶ 74.)

NSP alleges that it has suffered and will continue to suffer harm in Utah, including but not limited to loss of sales, damage to the value of their intellectual property, harm to their

4

customer goodwill, and damage to their existing and potential business relationships. (Id. ¶ 100–02.) NSP also contends that Mr. Gautam is personally liable for its damages because he either sells the products himself, or alternatively "directs, controls, ratifies, participates in, or is the moving force behind the acquisition and sale of infringing products bearing NSP's trademarks by SAAM." (Id. ¶¶ 5–6.) NSP further alleges that "SAAM follows so few corporate formalities and is so dominated by Gautam that it is merely an alter ego of Gautam." (Id. ¶ 7.)

## LEGAL STANDARD

The Defendants ask the court to dismiss this case for lack of personal jurisdiction. "Personal jurisdiction can be acquired through either general jurisdiction or specific jurisdiction." Xmission, L.C. v. Fluent LLC, 955 F.3d 833, 840 (10th Cir. 2020). The Defendants assert that the court has neither. NSP concedes that the court does not have general jurisdiction over the Defendants but maintains that the court has specific jurisdiction because NSP's claims arise out of the Defendants' "minimum contacts" with Utah. Id. (Pl.'s Opp'n, ECF No. 16 at 1.)

To determine whether this court has jurisdiction, the court must analyze whether exercising jurisdiction over the Defendants comports with due process.[4] Id. at 839. To do this, the court considers whether the defendants have minimum contacts with Utah "such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" Dudnikov v. Chalk & Vermillion Fine Arts, Inc., 514 F.3d 1063, 1070 (10th Cir. 2008)

---

[4] "A federal court may not exercise personal jurisdiction over an out-of-state defendant unless (1) an applicable statute authorizes service of process on that defendant and (2) the exercise of statutory jurisdiction comports with constitutional due process." Xmission, 955 F.3d at 839. Utah's long-arm statute "confers jurisdiction 'to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution.'" Id. (quoting Fenn v. Mleads Enters. Inc., 137 P.3d 706, 710 n.10 (Utah 2006)). "The two-step analysis thus collapses here into a single due-process inquiry." Id.

(quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). That is, the Defendant's contacts with the forum state "must be such that [Defendants] should reasonably anticipate being 'haled into court there.'" Xmission, 955 F.3d at 839–40 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

NSP has the burden to establish this court's jurisdiction. Id. at 839. But because the court is not conducting an evidentiary hearing, NSP need only make a prima facie showing that personal jurisdiction exists through affidavits or other written materials, including the complaint, to the extent the defendant has not presented evidence contradicting those allegations. See Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995). The court must accept uncontroverted well-pled allegations in the complaint as true. Id. If NSP establishes that the Defendants have minimum contacts with Utah, then the Defendants, to avoid litigating in the forum state, must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985).

## DISCUSSION

### I. Minimum Contacts

"Specific jurisdiction is proper if (1) the out-of-state defendant 'purposefully directed' its activities at residents of the forum State, and (2) the plaintiff's alleged injuries 'arise out of or relate to those activities.'" Xmission, 955 F.3d at 840 (quoting Burger King, 471 U.S. at 472).

### A. Purposeful Direction of Activities to the Forum

In order to conclude that the Defendants purposefully directed their activities at Utah, the court must find a substantial connection between the Defendants' business activities and the state. Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1160 (10th Cir. 2010). This requirement ensures that courts do not require an out-of-state defendant to account for "random,

6

fortuitous, or attenuated contacts" with the forum state, "the unilateral activity of another party or third person," or "the mere foreseeability that its actions may cause injury in that jurisdiction." Xmission, 955 F.3d at 840–41 (internal quotation marks and citations omitted).

A plaintiff can establish purposeful direction of a defendant's activities by showing "harmful effects in the forum State" or "exploitation of the forum-State market." Id. at 841. The United States Supreme Court laid out the harmful effects test in Calder v. Jones, 465 U.S. 783 (1984). Calder requires a plaintiff to show that the out-of-state defendant 1) intentionally committed an act 2) expressly aimed at the forum state 3) with the "knowledge that the brunt of the injury" would be felt in that state. Dudnikov, 514 F.3d at 1072; see also Old Republic Ins. Co. v. Cont'l Motors, Inc., 877 F.3d 895, 907 (10th Cir. 2017).

After careful consideration of the circumstances here, the court finds that NSP has sufficiently demonstrated that both SAAM and Mr. Gautam purposefully directed their activities at Utah.

    a. SAAM

SAAM has a nationwide business selling NSP products on Amazon. Its Amazon site is interactive, meaning that its customers can exchange information with SAAM and complete their purchases through the site. SAAM advertises dozens of NSP products, which it regularly sells and ships to Utah-based consumers, among others. (See Screenshot of NSP Products Offered by Defendants, ECF No. 16-2.) According to NSP, those sales include the unauthorized use of NSP's trademarks.

The Defendants downplay NSP's allegations about SAAM's Amazon sales, arguing that their online presence has not targeted Utah consumers specifically, instead aiming to serve consumers across all fifty states. (Gautam Decl. ¶¶ 10–11.) SAAM also emphasizes that its acts

giving rise to NSP's claims, specifically operating the website or shipping the NSP-trademarked products from SAAM's facilities, occurred in New York, where SAAM is based.  (Id. ¶ 4.)

But those facts do not necessarily immunize the company from a finding that it aimed its activities at Utah.  As this court has previously held in a case involving the unauthorized sale of candles in Utah through a Maryland seller's Amazon page, "[v]iolating a trademark right may satisfy the Calder effects test because the act of infringement targets the state where the trademark holder resides."  Allergy Rsch. Grp. LLC v. Rez Candles Inc., No. 2:21-CV-73-TC-JCB, 2021 WL 3862326, at *4 (D. Utah Aug. 30, 2021).  In keeping with this principle, this court denied the defendant's motion to dismiss, finding that it had personal jurisdiction over the defendant  because 1) "the defendant committed an intentional tort expressly aimed at a specific individual in the forum whose effects were suffered in the forum"; 2) the defendant had violated intellectual property rights through an interactive website; and 3) the defendant continued to sell the products after receiving multiple cease-and-desist letters in which the trademark holder threatened litigation and informed the defendants they were violating the rights of a Utah company.  Id. at 4.

The Ninth Circuit has upheld a lower court's finding of specific jurisdiction in nearly identical circumstances.  See Herbal Brands, Inc. v. Photoplaza, Inc., 72 F.4th 1085, 1093 (9th Cir. 2023), cert. denied, 144 S. Ct. 693 (2024).  In Herbal Brands, a manufacturer and distributor of health and wellness products sued an online seller for its unauthorized sale of the plaintiff's products on Amazon, alleging trademark infringement and tortious interference with its authorized seller agreements.  Id.  The Ninth Circuit held that "if a defendant, in its regular course of business, sells a physical product via an interactive website and causes that product to be delivered to the forum, the defendant has 'expressly aimed' its conduct at that forum."  Id.

The Ninth Circuit concluded that Herbal Brands had sufficiently established two key jurisdictional facts: first, that the out-of-state defendant's unauthorized sales were a part of the defendant's "regular course of business"; and second, that the defendant had exercised some level of control over the ultimate distribution of its products beyond placing the products into the stream of commerce. Id. at 1094.

NSP's uncontroverted allegations meet these same standards. First, NSP alleges that SAAM used its Amazon storefront, its means of conducting regular business, to make sales of NSP-trademarked products to Utah residents, offering a variety of products and conducting a high volume of sales throughout the country. And second, NSP has shown that SAAM exercised control over its distribution of NSP-trademarked products by operating a universally accessible website that accepts orders from and ships products to residents of all fifty states.

Indeed, a number of courts have similarly found that selling products on interactive websites (including Amazon) is purposeful conduct that targets the states in which either the consumer or the products' trademark holder is based. See, e.g., Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 171 (2d Cir. 2010) ("[B]y offering bags for sale to New York consumers on the [defendant's] website and by selling [and shipping] bags … to New York consumers, [Defendant] has 'purposefully availed himself of the privilege of conducting activities within the forum State.'" (citation omitted)); PopSockets LLC v. Y.E.F. Trading Inc., 2020 WL 6487418 (D. Colo. Nov. 4, 2020) (exercising personal jurisdiction where company with Amazon storefront sold high volume of sub-standard products bearing plaintiff's trademark without the plaintiff's permission); Otter Prods., LLC v. Phone Rehab, LLC, 2019 WL 4736462 (D. Colo. Sept. 27, 2019) (same); Stomp, Inc. v. NeatO, LLC, 61 F. Supp. 2d 1074, 1078 (C.D.

9

Cal. 1999) (finding it had personal jurisdiction in dispute where online retailer was accused of patent infringement through advertising and offering plaintiff's products for sale on the Internet).

As for the last prong of the court's purposeful direction analysis—examining the Defendants' knowledge that the brunt of harm would be felt in the forum state—this court has recognized that "there is some overlap between [the 'expressly aimed'] test and Calder's additional requirement … that a defendant must know that the harm was suffered in the forum state." Allergy Rsch. Grp., 2021 WL 3862326, at *5 (citing Dudnikov, 514 F.3d at 1074–75 (internal quotation marks and citation omitted)). NSP easily satisfies this element. NSP, like the defendant in Allergy Rsch. Grp., sent multiple cease-and-desist letters informing Defendants that their sales were directly harming NSP, a Utah-based company. See, e.g., IPOX Schuster, LLC v. Nikko Asset Mgmt. Co., Ltd., 191 F. Supp. 3d 790, 800–01 (N.D. Ill. 2016) (finding personal jurisdiction over a defendant who continued to violate plaintiff's trademark rights and damage its reputation and goodwill after receiving a cease-and-desist letter); Hilsinger Co. v. FBW Invs., 109 F. Supp. 3d 409, 426 (D. Mass. 2015) (similar); Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1391 (8th Cir. 1991) (defendant could reasonably foresee being haled into the forum state after it continued using plaintiff's trademark despite receiving cease-and-desist letter from plaintiff); Alpha Corp. v. Alfagres, S.A., 385 F. Supp. 2d 1230, 1236 (M.D. Ala. 2005) (similar); DakColl, Inc. v. Grand Cent. Graphics, Inc., 352 F. Supp. 2d 990, 999 (D.N.D. 2005) (noting that plaintiff's cease-and-desist letter gave defendant "ample warning" of the harm in the state, but defendant nevertheless continued using plaintiff's copyrighted material).

In sum, NSP has satisfied the Calder test and established that SAAM purposefully directed its activities at Utah.

b. **Somendar Gautam**

NSP has similarly met its burden to show that Mr. Gautam purposefully directed his tortious activities at Utah. The well-pled allegations show that Mr. Gautam individually took action in this scheme—namely by selling the NSP goods he purchased when he was an authorized NSP Consultant to SAAM for the purpose of its resale to consumers through its Amazon page. Accordingly, the court finds that NSP has adequately pled that Mr. Gautam committed torts and violations of the Lanham Act in his individual capacity—as an NSP Consultant—in addition to acting in his official capacity as a corporate officer of SAAM.

B. **Arises Out of or Relates to Defendants' Forum Activities**

To establish specific jurisdiction, NSP must also show that its alleged injuries arise out of, or are related to, the Defendants' activities. Xmission, 955 F.3d at 840. "The arising-out-of component of the test requires courts to ensure that there is an adequate link between the forum State and the claims at issue, regardless of the extent of a defendant's other activities connected to the forum." Id. (citation omitted). To that end, the court must ask whether there is "an affiliation between the forum and underlying controversy[.]" Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011).[5]

NSP has sufficiently established that the Defendants purposefully directed their activities, and the resulting harm, at a Utah company, NSP, and Utah consumers. According to NSP, the Defendants' sales of substandard products bearing NSP's trademarks have caused NSP a loss of its consumer good will and has diminished the brand's value in Utah and elsewhere. The sales

---

[5] Although the clause "arises out of" concerns causation, the "or related to" clause "contemplates that some relationships will support jurisdiction without a causal showing." Ford Motor Co. v. Montana Eighth Judicial Dist. Ct., 592 U.S. 351, 362 (2021).

have also compromised NSP's relationship with its authorized sellers. These allegations are sufficient to show that the injuries alleged arise out of the Defendants' activities in Utah.

## II.     Traditional Notions of Fair Play and Substantial Justice

Finally, the court must determine whether exercising personal jurisdiction over the Defendants would "offend traditional notions of fair play and substantial justice"—in other words, if it is reasonable for a Utah court to exercise jurisdiction over the Defendants. Xmission, 955 F.3d at 839, 840. At this stage of the analysis, the Defendants, to avoid litigating in Utah, must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King, 471 U.S. at 477. The court must consider:

> (1) the burden on the defendant, (2) the forum State's interesting in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1095 (10th Cir. 1998) (citing Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal., Solano Cnty., 480 U.S. 102, 113 (1987)).

### A.  Burden on the Defendants

The Defendants assert that they will be burdened if the court requires them to litigate in Utah because they are based in New York, as are their offices, facilities, documents, and resources relevant to this case. (Gautam Decl. ¶ 5; ECF No. 14 at 2, 11.) As an initial matter, the court finds that there is little to no additional burden on the Defendants to produce New York-based documents or evidence for a Utah case. Document discovery can be done electronically. Further, depositions of non-parties are conducted at locations convenient for each witness, "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. Proc. 45(c)(1)(A). Although the Defendants may eventually incur some additional legal and travel costs to try this case in Utah, the Defendants do not

explain why those costs would be "unduly burdensome." Aside from Mr. Gautam, it is unclear what witnesses the Defendants expect to call at trial and whether these witnesses are from New York. In any event, the court notes that any travel-related inconvenience cuts both ways, given that NSP's evidence and resources are presumably located in Utah—meaning that NSP's witnesses would need to travel to New York were they to refile their case there. Finally, the court notes that efficient case management, coupled with modern electronic methods of communication, will reduce any travel burdens that the Defendants may face. See AST Sports Science, Inc. v. CLF Distrib. Ltd., 514 F.3d 1054, 1061 (10th Cir. 2008) ("[M]odern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." (citing Burger King, 471 U.S. at 474)).

In sum, "the burden [on the Defendants] is not much greater than if the case were to be litigated in [New York]." Allergy Rsch. Grp., 2021 WL 3862326, at *6.

### B. Utah's Interest in Resolving the Dispute

Utah plainly has an interest in resolving this case. Four of NSP's six claims—common law trademark infringement, violation of Utah's Deceptive Trade Practices Act, violation of Utah's unfair competition statute, and tortious interference—allege violations of Utah statutes and common law. And because NSP is a Utah company, litigating the case here would further Utah's business interests. Further, this case involves protecting Utah consumers. In comparison, the Defendants fail to identify any interest that New York may have in resolving this dispute aside from protecting the Defendants, who are based in New York.

### C. NSP's Interest in Receiving Convenient and Effective Relief

As discussed above, NSP's witnesses and evidence relating to its trademarks, quality

controls, and brand protection programs are all located in Utah. As a Utah-based company, NSP would certainly find litigating here more convenient. The Defendants do not argue otherwise.

### D. The Interstate Judicial System's Interest in Efficient Resolution of the Dispute

Here, the court asks "whether the forum state is the most efficient place to litigate the dispute." OMI, 149 F.3d at 1097. Courts look at the "location of the witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." Id. at 1097 (internal citations omitted).

As discussed above, the witnesses in this litigation will no doubt come from both Utah and New York. As for the question of where the evidence is located, while the Defendants' actions took place in New York, their conduct injured Utah-based consumers and companies, meaning there is relevant evidence located in both forums. As for the choice of law, the Defendants do not dispute that Utah law applies.

Overall, the court finds that litigating this matter in Utah would be just as efficient, if not more efficient, than litigating in New York.

### E. States' Interest in Furthering Social Policies

Certainly, Utah has an interest in protecting its social policies, which are set forth in its statutes, including the two that NSP relies on. Defendants do not point to any specific interest that New York has in the litigation. Further, nothing in the record suggests that trying the case in Utah and applying Utah law would negatively affect New York's policies and interests. Accordingly, this factor weighs in favor of litigating the case in Utah.

## CONCLUSION

The Defendants have not presented a compelling case that being required to litigate in Utah would violate their due process rights or rise to the level of a "constitutional concern."

Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 947 (11th Cir. 1997), quoted in Peay v. BellSouth Med. Assistance Plan, 205 F.3d 1206, 1212 (10th Cir. 2000). Accordingly, the court finds it has personal jurisdiction over the Defendants.

## **ORDER**

For the foregoing reasons, the court DENIES the Defendants' Motion to Dismiss. (ECF No. 14.)

DATED this 22nd day of April, 2025.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge